```
1                   IN THE UNITED STATES DISTRICT COURT

2                      NORTHERN DISTRICT OF TEXAS

3                            DALLAS DIVISION

4    THE UNITED STATES OF AMERICA, )
                                   )
5                      Plaintiff,  )
                                   )
6    V.                            )   No. 3:17-CR-499-M-1
                                   )
7    ERIC GERARD McGINNIS,         )
                                   )
8                      Defendant.  )

9                       TRANSCRIPT OF SENTENCING

10          BEFORE THE HONORABLE BARBARA M. G. LYNN,

11                  UNITED STATES DISTRICT JUDGE

12                  WEDNESDAY, FEBRUARY 13, 2019

13                           DALLAS, TEXAS

14
     APPEARANCES:
15
     FOR THE GOVERNMENT:   MR. BRIAN W. MCKAY
16                         ASSISTANT UNITED STATES ATTORNEY
                           UNITED STATES ATTORNEY'S OFFICE
17                         1100 COMMERCE STREET, THIRD FLOOR
                           DALLAS, TEXAS  75242
18                         (214) 659-8600
                           brian.mckay@usdoj.gov
19

20

21

22

23

24

25
```

```
 1    APPEARANCES (CONTD):

 2
      FOR THE DEFENDANT:      MR. JUAN GABRIEL RODRIGUEZ
 3                            ASSISTANT FEDERAL PUBLIC DEFENDER
                              OFFICE OF THE FEDERAL PUBLIC DEFENDER
 4                            525 GRIFFIN STREET, SUITE 629
                              DALLAS, TEXAS  75202
 5                            (214) 767-2746
                              juan_g_rodriguez@fd.org
 6

 7

 8

 9

10    PROCEEDINGS REPORTED BY MECHANICAL STENOGRAPHY, TRANSCRIPT

11    PRODUCED BY COMPUTER-AIDED TRANSCRIPTION.

12

13    _____

14

15                   D. KEITH JOHNSON, RDR, CRR
                     FEDERAL OFFICIAL COURT REPORTER
16                    UNITED STATES DISTRICT COURT
                      NORTHERN DISTRICT OF TEXAS
17                  1100 COMMERCE STREET, ROOM 1572
                        DALLAS, TEXAS  75242
18                         (214) 753-2325
                     keith_johnson@txnd.uscourts.gov
19

20

21

22

23

24

25
```

```
 1              P R O C E E D I N G S

 2              (February 13, 2019)

 3         THE COURT:  Mr. McGinnis.

 4         MR. McKAY:  Brian McKay for the United States.  And

 5  I will note that lead ATF Agent Scott Satcher is here, as well

 6  as Special Agent Meagan Blazi (phonetics) of the United States

 7  Capitol Police.

 8         MR. RODRIGUEZ:  Juan Rodriguez for Mr. McGinnis,

 9  Your Honor.

10         THE COURT:  Mr. McGinnis, I'm Judge Barbara Lynn.

11  I'm the presiding judge in your case.

12         We are here today for me to sentence you in

13  connection with the matters as to which you have pled guilty.

14         Do you understand that?

15         THE DEFENDANT:  Yes, ma'am.

16         THE COURT:  All right.  Have you reviewed the

17  presentence report?

18         THE DEFENDANT:  I didn't plead guilty.  I was found

19  guilty, ma'am.

20         THE COURT:  Yes.  Have you read the presentence

21  report?

22         THE DEFENDANT:  Yes, ma'am.

23         THE COURT:  Okay.  Do you know of any mistakes in

24  the presentence report that need to be pointed out to me that

25  have not been pointed out by your lawyer?
```

```
 1              MR. RODRIGUEZ:  Your Honor, there was -- there was
 2    a clarification that we learned later, was the -- that
 3    Mr. McGinnis did receive four awards while in the service.  I
 4    got a copy of his DD-214 from his mother.  He received the Air
 5    Force Organizational Excellence Award, the National Defense
 6    Service Medal, the Air Force Overseas Long Tour Ribbon, and
 7    the Air Force Training Ribbon as well.
 8              THE COURT:  Okay.  I'll accept that, all of that
 9    information.
10              Mr. McGinnis, do you know of any mistakes in the
11    presentence report that need to be corrected?
12              THE DEFENDANT:  Not offhand, ma'am.
13              THE COURT:  All right.  Okay.  I'm going to read
14    into the record what I have.  If I'm missing something,
15    you-all will please let me know.
16              In addition to the presentence report, I have the
17    clarification of the Government relating to the dates of trial
18    in this case.  I have the addendum to the presentence report,
19    which clarifies that the defendant's Criminal History Category
20    is I.  I have the Government's motion for an upward variance
21    with a supplement.  I have the defendant's sentencing memo.  I
22    have the defendant's statement regarding the addendum,
23    confirming no objections to the presentence report.
24              And I have several character letters.  First, a
25    letter from Vincent and Emily McGinnis, the defendant's
```

```
1   parents.  I have a letter from Beverly Childs.  And I have a
2   letter from the defendant's brother, Kevin McGinnis.
3               Are there any other documents that the Court should
4   have in its file?
5               MR. RODRIGUEZ:  No, Your Honor.  I believe that's
6   correct and complete.
7               MR. McKAY:  Nothing from the Government, Your
8   Honor.
9               THE COURT:  All right.  Does the Government intend
10  to call any witnesses?
11              MR. McKAY:  No, Your Honor, I don't believe we need
12  to.
13              THE COURT:  And do you intend to call any
14  witnesses, other than the defendant?
15              MR. RODRIGUEZ:  No witnesses we're going to call,
16  but Mr. McGinnis' parents would like to speak on his behalf.
17              THE COURT:  Okay.
18              MR. RODRIGUEZ:  Emily and Vincent McGinnis.
19              THE COURT:  All right.  I'll hear from them now.
20              Have a seat at the table, please, Mr. McGinnis.
21              That's all right.  They can come up together.
22              MR. RODRIGUEZ:  Okay, Your Honor.
23              THE COURT:  Just wait for your husband.  You-all
24  can lean on each other.
25              MRS. EMILY McGINNIS:  Thank you.
```

1          Your Honor, I am Emily McGinnis, Eric McGinnis'

2  mother.

3          When Eric was two years old, we'd go to the mall at

4  least three times a week so he could go to his favorite store,

5  which was a bookstore.  He loved to read, he loved to have us

6  read to him, and by the time he was four, he was reading to

7  us.  The very first words that he learned to read or memorize

8  was "to be continued."

9          Eric was always a very active, creative child.  He

10  would take things apart just to see how they worked.  He was

11  never mean-spirited, even when something very bad happened to

12  him at the age of 12, he endured.

13          Once when my church group was going to feed and

14  clothe the homeless, I asked Eric if he had any clothes that

15  he could donate.  He came over and brought me 13 pairs of

16  shoes and 12 pairs of jeans.  That's the type of person Eric

17  is, always the first in line to give a helping hand to someone

18  in need.  I have seen him do this act of kindness many times.

19          Your Honor, Eric loves and misses his children.  He

20  wants to be able to see them, become a major impact in their

21  lives.  They know where he is, that he is ill and want to know

22  if he is getting his medication.

23          When Eric got ill, did he not get angry or blame

24  anyone.  He just concentrated on getting well.  His attitude

25  was we will take lemons and make lemonade.

```
1              Your Honor, Eric is a U.S. veteran.  He is not
2   hateful or dangerous.  He is ill and can be helped through
3   counseling and medication, not from being locked up 10 to 20
4   years.
5              Eric knows that he did wrong, and he's very sorry
6   for it.
7              And our hearts are saddened.  We, as his family,
8   will always be there for him and are willing to help him in
9   any way possible.  He will always have a place in our home.
10             We ask you, Your Honor, that you show mercy when
11  sentencing him.
12             Thank you.
13             THE COURT:  Thank you, Mrs. McGinnis.
14             Yes, sir.
15             MR. VINCENT McGINNIS:  Your Honor, Vince McGinnis,
16  Eric's father.
17             I stand here with his mother.  We submitted a
18  letter that --
19             THE COURT:  Yes, sir, I've read that.  Yes, sir.
20             MR. VINCENT McGINNIS:  I've seen that he's grown to
21  be a responsible person, of good moral character and a
22  positive asset to the family and to the community.
23             He's a strong -- committed to his kids.  And I know
24  that he's experienced some ups and downs and challenges and
25  had some issues with the legal system.  Nonetheless, he's
```

1    demonstrated an ability to make better decisions and choices
2    and improve his outlook for his future.
3            He's a very creative individual that can be an
4    asset to the community.  He's demonstrated his service through
5    his military service.  And as a result of that, VA benefits
6    are available to him to assist in treatment and medical
7    programs.
8            While he's made some significant bad decisions,
9    through the 16 months of positive confinement has made him
10   extremely remorseful, and he's willing to do whatever he can
11   to enhance his ability for a second chance.
12           He has the support of myself, his mother, the
13   extended family.  As you know, these incidents affect the
14   whole family.  And so again, I hope that he can move forward
15   in a positive way, that you can see positive attributes in the
16   future when you render your decision.
17           Thank you, Your Honor.
18           THE COURT:  Thank you, Mr. McGinnis and
19   Mrs. McGinnis.
20           All right.  Stay there for a moment, Mr. Rodriguez.
21           Mr. McKay, what sentence is the Government
22   advocating for?
23           MR. McKAY:  Your Honor, in the -- in light of the
24   fact that there are --
25           THE COURT:  You-all can be seated.  Thank you.

1      MR. McKAY:  -- only aggravating circumstances and

2  practically no mitigation -- to clarify, we're requesting a

3  sentence at the top of the statutory range, run concurrent, at

4  10 years.

5      THE COURT:  All right.  Thank you.

6      All right.  I'll hear from you, Mr. Rodriguez, and

7  I'll hear from Mr. McGinnis.

8      MR. RODRIGUEZ:  Thank you, Your Honor.

9      Mr. McGinnis is a 43-year-old man, veteran, of five

10  children.  And he has some serious mental health issues that

11  he needs to deal with.  He recognizes that.  I think we saw

12  some clarity regarding that in the FMC Fort Worth

13  psychological evaluation report, schizo effective disorder,

14  bipolar type, the paranoid personality disorder, a little bit

15  of what I talked about in my sentencing memo.

16      The childhood abuse that Mr. McGinnis endured at

17  age 12, the counseling and hospitalization that he had at age

18  14.  But he recognizes that he has these problems.  And I've

19  even seen a change from the first couple of times that I

20  talked to Mr. McGinnis back when he was locked up at Kaufman.

21      He has had at least four sessions with Dr. Yeh at

22  Seagoville.  He believes those are beneficial and have been

23  productive.  I don't believe those were able to make it into

24  the PSR, because Ms. Yeh eventually left and was replaced with

25  another therapist.  And I know that there was some problem

1    receiving certain records.

2            But Mr. McGinnis realizes that part of the problems

3    he was having and the mistakes that -- and errors that he's

4    made and the lack of better judgment stems from all of those

5    illnesses and the things that he's dealing with.

6            But I think that since I've, you know, discussed

7    these issues with him at Kaufman and then at Mansfield and now

8    at Seagoville, I believe that he has a strong desire to be a

9    better person.  He wants to -- to have a second chance; he

10   wants to be out there and help raise his kids.  And on top of

11   that, as I addressed -- and I know it's in the PSR --

12   Mr. McGinnis suffers from a terminal illness that's been

13   addressed, and that is an illness that is not curable.

14           We believe that the PSR is correct, and a

15   reasonable sentence, a reasonable range, Offense Level of 20,

16   Criminal History Category of I, 33 to 41 months, is

17   appropriate in this case, wherever the judge determines that

18   Mr. McGinnis should be.

19           We are asking for an assignment or a

20   recommendation, understanding that it's only a recommendation

21   by the Court for the Fort Worth Medical Center.  I know that

22   they have the ability to help people like Mr. McGinnis.  I've

23   had other clients go there, and -- because he needs mental

24   health treatment and wants that mental health treatment.

25           He knows that he will get supervised release, and

1  he wants that continued mental health treatment during

2  supervised release.  He wants to participate, he wants to get

3  better, and he knows that he can get better.  He knows with

4  the proper mental health treatment, counseling and medication,

5  if needed, that coincides with the other medication that he's

6  already taking for his illness, that he can come out of this a

7  successful person, he can benefit from the -- the treatment

8  within the Bureau of Prisons and the staff at the Medical

9  Center at Fort Worth.

10             He wants a second chance.  He knows he made a

11  mistake.  He knows it's a clear error of judgment.  And I

12  think part of all of those things that were going on in his

13  head led him down a path.  But I believe that he can make a

14  change.  He has the strong family support of his parents as

15  well as other extended family that is here.  And I know that

16  he wants to be a father to his kids and he wants to see them

17  grow up.

18             He's already been locked up 15 months and 25 days.

19  And I know that even though he requested a trial and was

20  convicted, that I've seen a change from the times that he was

21  at Kaufman to the time that he was at Mansfield to the time

22  that I just recently visited him at Seagoville.

23             Once again, we're asking for a guideline sentence

24  and supervised release, with the recommendation of the

25  Fort Worth Medical Center for mental health treatment as well

```
 1   as continued mental health treatment in supervised release.

 2            We don't believe that an upward variance is

 3   necessary or reasonable in this case.  We would feel that it

 4   would be a travesty to sentence him to an extended period of

 5   time, considering the things that he's going through as well

 6   as the illness that he currently has.

 7            We're also asking for the Court to run his sentence

 8   concurrent with the two misdemeanor charges he has, stemming

 9   from this same case.  That would be MA-1731114?

10            THE COURT:  I have those.  I will do that.

11            MR. RODRIGUEZ:  And MA-1731113.  And I know that

12   Mr. McGinnis wants to make a statement.

13            THE COURT:  All right.  Mr. McGinnis, you have

14   right to speak to me on any matter that you wish.

15            THE DEFENDANT:  I just want to thank you for your

16   time, Your Honor, and I just want to get back to my children.

17            THE COURT:  All right.  Thank you.

18            I'll hear from you, Mr. McKay.

19            MR. McKAY:  Your Honor, as I've said in the

20   materials that I've submitted to the Court, this is not a

21   guidelines case.  The guidelines here would be the same, would

22   be appropriate, if Mr. McGinnis had his short-barreled rifle

23   in a safe at home and -- and authorities had found it that

24   way.

25            That is absolutely not -- not what we have here.
```

1  Last summer, during trial, when I -- when I made opening

2  statements, I told the jury, this is a case that illustrates

3  what happens -- or illustrates the fact that for some people,

4  you can warn them once and you can even warn them a second

5  time, but they're still going to do whatever they want to do.

6  And that's Mr. McGinnis.

7           What's evident from the sentencing memorandum and

8  supporting materials submitted is that at every turn

9  Mr. McGinnis, in this case, we find aggravated -- the word

10  "concerning" is evident throughout those materials, both in

11  the Government's motion but also in the report of Dr. Scalora,

12  that at every turn, it's just elevation of concern, elevation

13  of concern.

14           He didn't have this gun at home.  Instead, he had

15  it in a public place.  He was shooting.  He had it with

16  ammunition.  He was shooting it in a public place.

17           It's additionally concerning that he's at that time

18  identifying himself as a government agent.  And not just, you

19  know, the idle, you know, product of delusion or something.

20  He's actively trying to get police to overlook his criminal

21  behavior, his law violations, "it's okay, it's okay," and

22  manipulating -- attempting to manipulate officers based on

23  this false claim of being a CIA agent, which is evident

24  through his Facebook, through the things he carries, through

25  the things that he says.  And I've pointed out, you know,

1    posts on Facebook that seem to excuse -- in his mind excuse

2    violence to others based on this claim that he is acting under

3    some authority of the United States Government.

4              It's very concerning that at the time he's doing

5    all of this, he's carrying a list of names and addresses of

6    public officials who, as Dr. Scalora, you know, verified in

7    the Government's argument, that it's concerning that he would

8    not just carry this, what's sort of in their world and their

9    business known as a hit list, but that he's doing it while

10   labeling them American terrorists and claiming to be part of

11   an organization that combats terrorists.

12             I think it's evident that what he is doing is

13   setting up -- that he poses a substantial risk to members

14   of -- members of Congress, to public officials, but also to

15   the public at large.

16             That he was twice warned.  A judge -- a Dallas

17   County judge told him -- and it's clear in the transcript

18   that's been submitted, "You can't have guns or ammunition."

19   He ignored it.  He tried to buy a gun.  An ATF agent -- the

20   background check system worked as it should, and he was denied

21   the ability to buy that firearm part that he needed.  An agent

22   reached out to him and said, "Listen, you can't have guns or

23   ammunition," and follows up even with a letter to inform him

24   of that.

25             And the evidence at trial showed that probably

1    within a month or so, he buys a 3D printer, he creates the

2    part that he couldn't buy, showing just how committed to the

3    criminal conduct he is at that point.  Again, just increasing

4    elevation, the level of concern.

5           That he has a history of violence to others.

6    Ms. Thrash was present at trial.  She testified to the abuse

7    that -- on at least two occasions that occurred by

8    Mr. McGinnis against her.

9           The fact that his mental history -- mental illness

10   history is not new.  It was not uncovered in the course of

11   this investigation.  The PSR documents that this has been an

12   ongoing issue.  And the other thing it documents is just how

13   little receptivity to treatment he's had.

14          People have attempted to help him.  And in a very

15   short period, he's declined to do it, thinking that it's not

16   something that -- it either made him feel tired or something;

17   he never wanted to avail himself of the resources that would

18   have been available to him for seemingly over -- over a

19   decade.  Again, additional red flags and elevation of concern

20   there.

21          And then the fact that U.S. Capitol Police have

22   conducted forensic analysis of his electronic devices and sort

23   of verifies what -- what we know from what we saw at trial in

24   his conduct, that he has a strong interest in homemade

25   weapons, in public officials, in particular in James

1   Hodgkinson.  The search is showing that he's looking for this

2   material and Mr. Hodgkinson, of course, being the man who shot

3   up a baseball practice of Republican Congressmen, injuring

4   three people in the process.

5          And it's notable that this search, according to the

6   forensic review, happens not before he was arrested on these

7   offenses, but after he was arrested and bonded out.  Even then

8   there wasn't some recognition that -- that this is dangerous,

9   that he needs to find a different path.

10         So at every turn, what we're reading from the

11  materials is that this is more concerning, this is even more

12  concerning, this is of even greater concern.  And yet what's

13  absent is anything saying "and this mitigates that concern."

14  It's simply not there.

15         And I know that the Government is requesting a

16  substantial variance from the guidelines range, because the

17  guidelines simply don't account for all of these concerning

18  facts that I've pointed out.

19         But in the absence of something that reassures us

20  that he isn't the danger he has made himself out to be, I

21  think that the only thing that can protect the public is a

22  substantial variance above the guideline range.

23         And I note also in the sentencing materials, the

24  fact that he's not been deterred shows that a guideline

25  sentence is not appropriate in this case.  He has been very,

1  very committed to the crimes that he's committed and the

2  concerning facts that are present here.  And I don't believe a

3  guideline sentence would adequately deter him in the future.

4        THE COURT:  Do you want to have the last word,

5  Mr. Rodriguez?

6        MR. RODRIGUEZ:  Yes, Your Honor.

7        I think everything that the Government counsel said

8  would apply to someone that didn't have the level of mental

9  health problems that Mr. McGinnis has.  He needs help.  You

10  know, delusions of working for the CIA or CSI and dealing with

11  all he had going in his head, yes, he made some things -- he

12  made some serious errors of judgment.  But I don't think that

13  an upward variance would be beneficial to a person with a

14  terminal illness, in Criminal History Category I, that needs

15  treatment.

16        I don't think there was ever any evidence uncovered

17  of when the 3D printer was purchased.  And so I would submit

18  that that may have been a misstatement.

19        But I think with proper treatment and counseling by

20  the professionals at the Bureau of Prisons, they would

21  definitely -- Mr. McGinnis would definitely be benefited from

22  that.  And so we're asking for a guideline sentence, Your

23  Honor.

24        MR. McKAY:  If I may, Your Honor.  I just want to

25  clarify.  It was not a misstatement.  We cannot show when the

1    3D printer was purchased, but -- I'm referring to the

2    transcript of the detention hearing; I believe it's also

3    covered in the PSR -- that after Mr. McGinnis' arrest, he was

4    recorded in jail calls with his family.  When asked, "How long

5    have you had that gun?" he says, "About a year."  That's

6    consistent with having been turned down in his attempt to buy

7    the part from a federal firearms licensee, and it was about a

8    year and a month later that he was actually arrested with the

9    gun.  Again, told a family member that he had had it about a

10   year.

11               MR. RODRIGUEZ:  I think I was responding to the

12   statement that he -- when he was turned down, he went out and

13   purchased a 3D printer.

14               MR. McKAY:  And, Your Honor, in fairness --

15               MR. RODRIGUEZ:  That's what I was clarifying.

16   There's no evidence that he purchased the 3D printer right

17   after he was turned down.

18               MR. McKAY:  And, Your Honor, I -- I cannot show

19   when that 3D printer was actually purchased.

20               THE COURT:  Okay.  Thank you.

21               Anything further?

22               MR. RODRIGUEZ:  Nothing further, Your Honor.

23               THE COURT:  All right.  Well, Mr. McGinnis, let me

24   make a couple of observations.  The Court has to determine

25   all -- has to consider all of the factors under the statute in

1    determining what is an appropriate sentence for you.

2            I'm not going to incarcerate you for the purpose of

3    your receiving treatment, but during the time that you are

4    incarcerated, you will be receiving treatment, I am quite

5    confident, because you are suffering from a mental illness of

6    the type that needs treatment, and you should completely avail

7    yourself of that.

8            There is history here that helps explain your

9    mental condition.  Your mother alluded to it.  Your physical

10   condition is also something that I'm sure contributes to

11   adverse effects on your mental health.  But the Court has to

12   consider the whole of you and whether you are dangerous in

13   your current condition, and my conclusion is that you are.

14           This whole circumstance surrounding your possession

15   of this weapon, what you were doing with it, what you said

16   about it, the list that you were carrying, in the Court's

17   view, is of great concern.  One particular factor that I am

18   obligated to consider, and that is protection of the public.

19   And that is the principal factor that the Court is most

20   concerned with that I will address in connection with my

21   sentence.

22           So I believe I stated, but in case I didn't, your

23   offense level is calculated under the guidelines as 20.  Your

24   Criminal History Category is I.  That is a guideline range of

25   33 to 41 months.  The Court, however, is to consider the

1    guidelines as advisory, which is what they are, and not

2    dispositive, because they are not.

3            In determining the appropriate sentence, the Court

4    is to consider the factors under 18 United States Code,

5    Section 3553(a), to impose a sentence that is sufficient but

6    not greater than necessary to satisfy the purposes of the

7    statute.

8            So I begin with the nature and circumstance of the

9    offense.  I regard this offense as extremely serious.  You

10   were told you couldn't possess this firearm.  You were warned.

11   You were warned again.  You were turned down.  You created

12   your own receiver because you could not legitimately buy the

13   gun.  That shows a person who is committed to the enterprise

14   of having a firearm.  You were firing the gun.  You were not

15   complying with the instructions, and you were carrying a list

16   that I don't think requires a lot of extrapolation to conclude

17   was a list of people that you were interested in as American

18   terrorists while carrying a firearm.

19           And your internet searches are consistent with the

20   concern that the Capitol Police have expressed about what you

21   were up to with that list and what your intentions were.  Very

22   concerning to the Court.

23           Your history and characteristics.  Admittedly

24   you're a Criminal History Category I, but things in your

25   background are of grave concern to me.

1          History of domestic violence, a history of this

2    obsession with your role with the CIA.  I think you -- I

3    assume that you concluded that you really were associated with

4    the CIA.  Whether you were just making that up or believed it,

5    either way, of grave concern to me.  History of mental

6    illness, that is of additional concern.

7          The Court is of the view that I need to impose a

8    sentence that reflects the seriousness of the offense,

9    promoting respect for the law and justly punishing you and

10   deterring others from criminal conduct, but most importantly

11   to protect the public from further crimes in which you might

12   engage.

13         In terms of educational, vocational or medical

14   issues, I accept your attorney's request that I recommend you

15   for a medical center in the Dallas/Fort Worth area.  I will do

16   that, emphasizing that you need mental health treatment as

17   well as treatment for your physical illness.

18         The Court is of the view that the guidelines do not

19   impose a sentence that is sufficient, in light of all of the

20   factors that the Court is to consider under the guidelines.

21         I think that you are a danger to the community.  I

22   am hopeful that at some point, you will not be a danger to the

23   community.  But the guideline range, in the Court's view, does

24   not provide an adequate sentence to ensure that and to protect

25   the public.

1          The Court believes that a variance up to the

2   maximum statutory amount is too high.  However, the Court will

3   vary upward to a sentence of 96 months.  That is the sentence

4   that the Court will impose.  That will date back to the time

5   that you have been in custody, which is October the 12th,

6   2017.

7          That will be a sentence of 96 months on each of

8   Counts One and Two, to run concurrently with one another, and

9   to run concurrently with any sentence that might be imposed in

10  the two state charges which Mr. Rodriguez alluded to, Case

11  Number MA-1731114 and MA-1731113, pending in Dallas County

12  Criminal Court Number 2, because those cases are related to

13  this offense.

14          Pursuant to 18 United States Code, Section 924(d)

15  and 28 USC, Section 2461(c), and Federal Code of Criminal

16  Procedure 32.2(b)(4)(B), I order your interest in the

17  AR-15-style rifle, unspecified manufacturer, with the barrel

18  of less than 16 inches in length, including any ammunition,

19  magazines and/or accessories recovered with it, to be

20  condemned and forfeited to the United States.

21          I will not require you to pay a fine, because I

22  conclude you do not have the resources or earning capacity to

23  do so.  But I do require you to pay a mandatory special

24  assessment of $100 on each count of conviction, totaling a

25  special assessment of $200.

1    You will, when you are released from prison, be on

2    supervised release for three years on each of Counts One and

3    Two, to run concurrently with each other.

4    When you are released from prison, you'll comply

5    with the standard conditions contained in the Court's judgment

6    and with these mandatory and special conditions:

7    You will not commit another federal, state or local

8    crime.

9    You will not unlawfully possess a controlled

10   substance.

11   You will cooperate in the collection of D.N.A. as

12   directed by the probation officer.

13   You will refrain from any unlawful use of a

14   controlled substance, submitting to one drug test within 15

15   days of release from imprisonment and at least two periodic

16   drug tests thereafter as determined by the Court.

17   You will participate in a program, inpatient and/or

18   outpatient, approved by the probation office, to treat

19   narcotic, drug or alcohol dependency, which will include

20   testing to detect substance use or abuse.

21   If you are receiving treatment, you may not use

22   alcohol and/or all other intoxicants at any time.  You will

23   contribute to the cost of these services on a copayment basis

24   at a rate of at least ten dollars per month.

25   You will also participate in mental health

1    treatment services as directed by the probation officer until

2    you are successfully discharged.  These services may include

3    medications prescribed by a licensed physician for which you

4    will also contribute on a copayment basis at a rate of at

5    least $10 per month.

6           Are there other issues that either the defense or

7    the Government wish the Court to address in the Court's

8    judgment?

9           MR. RODRIGUEZ:  Nothing further from the defense,

10   Your Honor.

11          MR. McKAY:  Your Honor, the Court will recall that

12   Sherry Diane Thrash testified at trial, and she was the

13   subject of the protective order that was previously entered.

14          I would ask the Court to consider prohibiting any

15   direct or indirect contact with Ms. Thrash during the term of

16   supervised release.

17          THE COURT:  Okay.  That is granted.  The Court will

18   prohibit contact with Ms. Thrash during the defendant's three

19   years of supervised release.

20          Any other issues?

21          MR. McKAY:  No, Your Honor.

22          THE COURT:  All right.  Then the Court does impose

23   the sentence as stated.

24          Copies of the presentence report will be furnished

25   to the Bureau of Prisons and the Sentencing Commission.

1              You do, Mr. McGinnis, have the right to appeal from

2   your conviction and from the Court's sentence.  If you wish to

3   appeal, you must do so within 14 days of the date of judgment.

4              You are entitled to court-appointed counsel at no

5   expense to you, and that will continue in connection with any

6   appeal.

7              Is there anything further?

8              MR. RODRIGUEZ:  Nothing further, Your Honor.

9              MR. McKAY:  No, Your Honor.

10             THE COURT:  All right.  Then the Court does impose

11  the sentence as stated.

12             Thank you.  All right.  Good luck to you,

13  Mr. McGinnis.  Thank you.

14

15

16             (Proceedings concluded.)

17

18

19

20

21

22

23

24

25

1                CERTIFICATE OF OFFICIAL REPORTER

2

3          I, D. Keith Johnson, RDR, CRR, Federal Official

4    Realtime Court Reporter, in and for the United States District

5    Court for the Northern District of Texas, do hereby certify

6    that pursuant to Sections 753, Title 28, United States Code,

7    that the foregoing is a true and correct transcript of the

8    stenographically reported proceedings held in the

9    above-entitled matter and that the transcript format is in

10   conformance with the regulations of the Judicial Conference of

11   the United States.

12                    Dated this 25th day of March, 2019.

13

14                    /s/ D. KEITH JOHNSON_____
                      D. KEITH JOHNSON, RDR, CRR
15                    TEXAS CSR NO. 3781
                      FEDERAL OFFICIAL COURT REPORTER
16                    1100 COMMERCE STREET, ROOM 1572
                      DALLAS, TEXAS  75242
17                    214.753.2325

18

19

20

21

22

23

24

25

```
 1                          INDEX

 2   PROCEEDING:                                      PAGE

 3   PRELIMINARY MATTERS...................................    3

 4   STATEMENT BY EMILY McGINNIS...........................    5

 5   STATEMENT BY VINCENT McGINNIS.........................    7

 6   STATEMENT BY MR. RODRIGUEZ............................    9

 7   STATEMENT BY THE DEFENDANT...........................   12

 8   STATEMENT BY MR. McKAY...............................   12

 9   FURTHER STATEMENT BY MR. RODRIGUEZ...................   17

10   SENTENCING...........................................   18

11   PROCEEDINGS CONCLUDED................................   25

12   COURT REPORTER'S CERTIFICATE.........................   26

13

14

15

16

17

18

19

20

21

22

23

24

25
```